(October 9, 1915.)

## EDNA A. CHANEY, Respondent, v. THE GAULD CO., a Corporation, et al., Appellants.

[152 Pac. 468.]

INJUNCTION—REAL ESTATE—CONVEYANCE OF—WIFE'S SEPARATE PROP- ERTY — SUFFICIENCY OF EVIDENCE — TITLE IN HUSBAND — CREDIT GIVEN HUSBAND — PLAINTIFF'S NEGLIGENCE OR CARELESSNESS — FRAUD ON CREDITORS — CONSTITUTIONAL AND STATUTORY CONSTRUC- TION—COMMUNITY PROPERTY.

1. Where an injunction is sought to prevent the sheriff from selling at sheriff's sale land standing in the name of the debtor to satisfy a judgment obtained against him for merchandise sold and delivered to him, and the wife of the debtor claims the land as her separate property, the trial court ought not to receive secondary evidence to establish the wife's claim unless it is made to appear that the best evidence cannot be had of the fact that the money paid for such land was money that belonged to her. Her oral testimony ought not to be received where the drafts, checks or bank-books can be produced on the trial, they being the best evidence that such money belonged to her. However, proper objections should be made to the introduction of secondary evidence.

---

On estoppel of land owner by allowing record title to remain in another, see, generally, note in 22 L. R. A. 256.

As to estoppel of one who permits title of real property to stand in another's name to assert title as against the latter's creditors, see notes in 30 L. R. A., N. S., 1, 46 L. R. A., N. S., 1097.

On estoppel against assertion of title or interest in property of spouse as against third persons by concealing the same, see note in 48 L. R. A., N. S., 757.

2. In cases of this kind the plaintiff should be required to produce proof, clear, convincing and satisfactory, that the land involved is her separate property.

3. Where the husband procures credit upon a financial statement of his assets and liabilities and lists the real estate of his wife, which stands in his name, as property belonging to him, the wife is estopped to assert and claim her title to such property as against the creditors of her husband, which credit was obtained by reason of the fact that she permitted the title to the land to remain in her husband.

[As to estoppel of wife, who permits husband to retain record title to her realty, to deny such title against one extending credit to him, see note in Ann. Cas. 1914C, 1066.]

4. If the true owner of land permits the title thereof to remain in her husband and he procures credit because of his apparent ownership thereof, under such facts the law is well settled that where one of two innocent parties must suffer through the fraud of a third, the loss should fall upon the one who by his own act created the circumstances which permitted the fraud to be perpetrated.

5. As a rule, real estate purchased with money borrowed by the wife during the existence of the community is community property, and the wife in such a transaction occupies no different position from what the husband would had he borrowed the money and purchased the real estate.

6. Under the provisions of sec. 2676, Rev. Codes, all property of the wife owned by her before marriage and that acquired afterward by gift, bequest or descent or that she shall acquire with the proceeds of her separate property shall remain her sole and separate property.

7. Sec. 2680, Rev. Codes, provides that all other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use.

8. All property acquired by either spouse during coverture is presumed to be community property, and the burden of proof rests upon the party who asserts it is separate property to show such fact by a preponderance of evidence.

[As to what is community property, see note in 126 Am. St. 100.]

APPEAL from the District Court of the Seventh Judicial District, in and for Canyon County. Hon. Ed. L. Bryan, Judge.

Action to enjoin the defendants from having sold at sheriff's sale certain lands claimed by the appellant. Judgment for plaintiff. *Reversed.*

L. M. Lyon, for Appellants.

The written documents or papers were the best evidence. (*Keane v. Pittsburg L. Min. Co.,* 17 Ida. 179, 105 Pac. 60.)

"All evidence which shows upon its face that better remains behind is secondary." (17 Cyc. 465, and numerous citations.)

The burden was upon the respondents (husband and wife) to establish the good faith of the transaction between them. (*Bates v. Drake,* 28 Wash. 447, 68 Pac. 961.)

The wife must show that the property was purchased by her out of her separate estate. (20 Cyc. 604; *Robson v. Hamilton,* 41 Or. 239, 69 Pac. 654.)

And such proof must be "clear, convincing and satisfactory." (*Mendenhall v. Elwert,* 36 Or. 375, 52 Pac. 22, 59 Pac. 805, and cases cited; *Kalinowski v. McNeny,* 68 Wash. 681, 123 Pac. 1074.)

"If a wife allows her husband to retain the title of property to which she is entitled, and to use it to obtain credit, she is estopped to claim the property as against a creditor who extended credit to him under the belief that the property was his." (*David Adler & Sons Clothing Co. v. Hellman,* 55 Neb. 266, 75 N. W. 877; *Marysville Inv. Co. v. Holle,* 5 Kan. App. 408, 49 Pac. 332; *Holland v. Jones,* 48 S. C. 267, 26 S. E. 606; *Iseminger v. Criswell,* 98 Iowa, 382, 67 N. W. 289; *Peabody v. Lloyds Bankers,* 6 N. D. 27, 68 N. W. 92; *Kalinowski v. McNeny, supra;* Bigelow on Estoppel, 6th ed., 607, 608; *First National Bank v. Kissare,* 22 Okl. 545, 132 Am. St. 644, 98 Pac. 433; *McNeil v. Tenth Nat. Bank,* 46 N. Y. 325, 7 Am. Rep. 341.)

Bowen & Riebeling, for Respondent.

Whenever property is acquired by the husband under an express trust for the benefit of his wife, or upon his agree-

·ment to hold the same in trust for her, the property will generally become her separate estate.    (21 Cyc. 1383; *Goldsberry v. Gentry,* 92 Ind. 193.)

Where the title to land bought by the husband with his wife's money is taken by the husband under an oral agreement to hold in trust for her, the trust is valid.    (*Garner v. Second National Bank,* 151 U. S. 420, 14 Sup. Ct. 390, 38 L. ed. 218; *Stickney v. Stickney,* 131 U. S. 227, 238, 9 Sup. Ct. 677, 33 L. ed. 136.)

Purchases made with the proceeds of the wife's separate estate become her separate property, and it is immaterial that the conveyance is to the husband.    (21 Cyc. 1389.)

"An essential attribute of the wife's separate estate is, that it is not liable for the husband's debts, and she is entitled in equity, to relief by injunction against the levy of an execution thereon by his creditors."    (21 Cyc. 1439.)

If a debtor holds the bare legal title to property for another and has no beneficial interest therein, it cannot, in the absence of elements of estoppel, be reached and subjected to the payment of his debts, and therefore a conveyance thereof by him to the equitable owner is not fraudulent as against his creditors.    (20 Cyc. 370, and cases cited in note 20; *Goldsmith v. Fuller,* 30 Neb. 563, 46 N. W. 712.)

SULLIVAN, C. J.—This action was brought to perpetually restrain the sheriff of Canyon county from selling at sheriff's sale the north one-half of.the southwest quarter of the northwest quarter of sec. 26, tp. 9 north of range 5, West Boise Meridian, Canyon county, to satisfy a judgment against her husband.

Upon a trial of the case the court made its finding of facts, conclusions of law and entered judgment in favor of the plaintiff, perpetually restraining the defendant, as sheriff, from selling said land.    The appeal is from the judgment.

The main contention is that the evidence is insufficient to support the findings and judgment.

It is contended by appellant that the conveyance of said land by the husband, Edward Allen Chaney, to his wife,

Edna A. Chaney, the plaintiff, made and executed the day after the suit was brought against her husband by his creditors, was made to hinder, delay and defraud the creditors and that under the facts of the case the plaintiff is estopped to claim and assert title to said land against the appellant creditor.

It appears from the evidence that the husband of the plaintiff was engaged in the plumbing business at Payette, Idaho, and kept a store there where he had bath-tubs and other plumbing supplies of various kinds for sale. He had purchased plumbing supplies from the defendant company and became indebted to it in the sum of about $1,200 and was unable or refused to pay for the same, and a suit was brought against him by the appellant corporation and judgment obtained for about $1,100.

When said action was commenced an attachment was issued and levied upon the land involved in this suit, and after judgment was obtained the sheriff was proceeding to sell the same to satisfy the judgment when this action was brought by the wife of said judgment debtor to restrain the sale of said land, on the ground that said land was her separate property, she having made the first payment of $2,000 therefor with money borrowed from her father.

The record shows that the deed to said land was taken in the name of her husband, but was not recorded, but kept in his possession until the day after the suit was brought against him. by the defendant company to recover from him the amount due it for plumbing supplies sold and delivered to him, when he conveyed the land to her.

The plaintiff testified on the trial of the instant case that it was her intention to have the title to said land conveyed to herself, but that the person who drew the deed inserted therein the name of her husband; that some days after such conveyance was received she examined the deed and found that the land was conveyed to her husband, and thereupon she had a conversation with her husband in regard to the matter, and she testified as follows: "I asked Mr. Chaney to just hold it in trust and at any time that I should demand it, to

turn it over to me and have this deed placed in the feminine, E. A. Chaney. . . . . Noticing the error, I asked him to hold it in trust for me to be turned over to me at any time I should wish it.'' It appears that Mrs. Chaney's initials are the same as her husband's and when she found that it was made out, as she testified, ''in the masculine,'' she wanted it changed to the ''feminine.''

She further testified: ''The day I demanded the deed to be put in my name was the day he told me he was sued. I demanded my rights to be protected then; I knew absolutely nothing of the difficulties until that day.'' She testified that she borrowed the $2,000 of her father which she paid on the land in question, and also borrowed another $1,000 of him which she loaned to her husband. The evidence shows that her father sent her the money in two drafts, one for $2,000 and one for $1,000; that she deposited them in a bank at Payette and the money was checked out from there.

It was objected on the trial that plaintiff's oral testimony in regard to this money was not the best evidence; that she ought to have produced the letters from her father, the checks or drafts and the books of the bank as the best evidence. Counsel's contention in this respect is no doubt correct. In transactions of this kind between the husband and wife, where the wife is attempting to protect property which she claims as her separate property from the debts of her husband, which has been standing in his name, the evidence ought to be clear and convincing, and the best evidence that can be produced ought to be presented on the trial. It is stated in 17 Cyc. 465, that ''All evidence that shows upon its face that better remains behind is secondary.'' (*Putnam v. Goodall,* 31 N. H. 419. See *Mendenhall v. Elwert,* 36 Or. 375, 52 Pac. 22, 59 Pac. 805, and cases there cited.) As against a pre-existing creditor, a wife who takes a conveyance from her husband must show adequate consideration by clearer and fuller proof than is required in transactions between strangers. (20 Cyc. 604.) If it were made to appear that the drafts and bank-books could not be produced or had been destroyed, then and only then should the court

have admitted secondary evidence of the financial transaction claimed to have taken place between the plaintiff and her father. However, we do not rest the decision on this point.

As above stated, the husband had a plumbing business where he was buying from wholesalers and selling plumbing goods. The agent of R. G. Dun & Co. procured a statement from the said husband, which was signed by him, in regard to his financial condition, and furnished an abstract of such statement to the defendant company, and it appears from the evidence that the credit was extended to the husband on the strength of said financial statement. In other words, the statement furnished to Dun & Co. was used as a basis for credit. The agent who procured said statement from Chaney testified: "When I called upon Mr. Chaney I informed him I was representing R. G. Dun & Co. and would like to have a statement of his assets and liabilities for the use of my company. In reply to my questions relative to his assets and liabilities he said in substance that he had stock on hand, $500; accounts receivable, $600; cash on hand and in bank, $900; fixtures, machinery and tools, $100; 20 acres of fruit land 2 miles northeast of Payette, $8,000; that he was owing on the land $3,000, and for merchandise not due $500. He further claimed to have fire insurance of $500 and that he was paying a monthly rental of $20."

The evidence also shows that the defendant company was a subscriber to R. G. Dun & Co., and that in the matter of extending credit to Chaney it was governed by said financial statement made by Chaney.

Now, if we concede (which we do not) that the evidence was sufficient in this case to warrant the trial court in holding that said land was the separate property of Mrs. Chaney, the next question presented is whether she is estopped to claim and assert title to said land as against the claim of the appellant.

It is a well-established principle that where the true owner of property, for however short a time, allows another to appear as the owner or having full control of, or disposition

over, the property, and innocent third parties are thus led into dealing with the apparent owner, they will be protected, and such rights do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from the conduct of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party using such property to obtain credit. (See Bigelow on Estoppel, 6th ed., 607.)

In the case of *McNeil v. Tenth National Bank,* 46 N. Y. 325, 7 Am. Rep. 341, the court said:

"Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

As bearing on this subject, see *First National Bank v. Kissare,* 22 Okl. 545, 132 Am. St. 644, 98 Pac. 433; 7 Modern American Law, p. 488.

The record shows that Chaney and his wife never lived on the fruit ranch, hence the question of the alienation of property on which the husband and wife lived does not arise in this case.

It is clear from the evidence that Chaney would not have obtained the credit from the defendant company had he not represented that he was the owner of said land. To be sure, the deed conveying it to him was not placed on record but was in his possession, and had Dun's agent examined the records of Canyon county to ascertain whether Chaney was the owner of said land and found this deed not on record and had advised Chaney of that fact, he no doubt would have produced the deed then in his possession and exhibited it to the agent.

The plaintiff, through negligence or carelessness, allowed the legal title of this land to remain in the name of her hus-

band, which enabled him to procure credit because of his apparent ownership thereof, and the law is well settled that where one of two innocent parties must suffer through the fraud of the third person, the loss should fall upon the one who, by his own act, created the circumstances which permitted the fraud to be perpetrated. From all of the evidence in this case and the rules of law applicable thereto, we are satisfied that it would be a fraud upon the defendant corporation to permit Mrs. Chaney to assert title to said land, and that under the law she is estopped from so doing.

However, if we concede that the plaintiff is not estopped from asserting title to said land by reason of the facts above stated, there is another reason why she cannot recover in this case. It is conceded she borrowed the money to make the first payment on this land from her father, and, as we understand the record, she executed a mortgage on the land to secure the payment of said money. It was borrowed money and she or someone else must repay it. It has been held by this court that, as a rule, property purchased with money borrowed by either spouse during the existence of the community is community property. (*Northwestern & Pacific Hypotheek Bank v. Rauch,* 7 Ida. 152, 61 Pac. 516.) Had the husband borrowed this money to make the first payment on said land, the land would become community property and the wife occupies no better position than the husband in that regard.

Under the provisions of sec. 2676, Rev. Codes, all property of the wife owned by her before marriage and that acquired afterward by gift, bequest or descent, or that which she shall acquire with the proceeds of her separate property, shall remain her sole and separate property. Sec. 2680, Rev. Codes, provides that all other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use.

In *Humbird Lumber Co. v. Doran*, 24 Ida. 507, 135 Pac. 66, this court held that all property acquired by either spouse during coverture is presumed to be community property, and the burden of proof rests upon the party who asserts that it is separate property to show such fact by a preponderance of the evidence. The plaintiff has failed to show in this case by any evidence whatever that said real estate is her separate property, but, on the contrary, has shown that it was not her separate property, since she borrowed the money with which to make the first payment and did not pay for it with money belonging to her that she had acquired under the provisions of sec. 2676, Rev. Codes. Since the community was liable for the money borrowed to make said first payment and also for the payment of the balance due on the land, said land was community property and subject to the payment of the judgment of the defendant.

The judgment is therefore reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion. Costs awarded to appellants.

Budge, J., concurs.

MORGAN, J., Concurring.—I concur in the conclusion reached in the foregoing opinion and base my action in so doing solely upon the ground that the land sought to be sold to satisfy appellant's judgment has not been shown to be the separate property of the respondent, Edna A. Chaney. In fairness to the learned trial judge it may be stated that this point was not raised in his court; neither was it urged upon appeal. The only contentions of appellant here are (1) that the best evidence was not produced to prove that Mrs. Chaney received the money from her father with which the land was purchased, and (2) that she is estopped from claiming the property as her own.

While it is the rule that the best evidence of which a case is susceptible should be produced and if documentary evidence exists oral testimony to prove the facts therein disclosed should not be received, it does not follow that the court

committed error in receiving the testimony of Mrs. Chaney that she received the money from her father with which the land was purchased. The record of her testimony upon this point is as follows:

"Q. How much money did you pay down at the time this land was purchased?

"A. Two thousand dollars.

"Q. From whom did you procure this $2,000?

"A. From my father.

"Q. Had your husband any interest whatever in this $2,000 you paid for the purchase of this land?

"A. None whatever."

It will be observed that no objection was made to any of the foregoing questions, and certainly it is not the duty of a trial court to stop the examination of a witness and make an objection for a litigant, nor can it well be imagined how the court could know that better evidence existed. In the absence of an objection the testimony of Mrs. Chaney was competent.

Mrs. Chaney's husband testified as follows:

"Q. Do you know where she got the money to put into that property, $2,000?

"A. I do.

"Q. State where she procured this money.

"Defendant objects as not the best evidence and incompetent. Overruled.

"A. She got it from her father.

"Q. Where did her father live at the time, if you know?

"A. He lived in Harlan, Iowa.

"Q. Is her father living now?

"A. He is.

"Q. How was that money procured, if you know?

"A. You mean how she got it?

"Q. Yes, whether by a letter to her father and what response her father made and what inclosures were made.

"A. We first spoke of it we were home on a visit there, and her and her mother talked it over and figured to let her

have the money to invest in land; that was the way it came up, and after we got home they sent it to her.

"Q. Do you know of your own knowledge of the transfer of the identical money that your wife got from her father to the payment of this Rans deed?

"A. It came in two drafts.

"Q. State what you know in reference to the transfer of this identical money in payment of this land.

"A. It came in the form of two drafts, one for $2,000 and the other for $1,000, and it was deposited in the Payette National Bank and checked out from there."

Mrs. Chaney's father made a deposition which was read into the record and in which he testified as follows:

"Q. State if you furnished the said Edna A. Chaney, plaintiff herein, with any money in the month of March or April, 1911, and if so how much money you did furnish her and for what purpose.

"A. I furnished said—

"Defendant objects for the reason that it is not the best evidence and incompetent. Overruled.

"A. I furnished said Edna A. Chaney, plaintiff herein, with the sum of $3,000 in March or April, 1911, for the purpose of buying land in Payette, Idaho.

"Q. State if the money so furnished said Edna A. Chaney, plaintiff herein, was a loan from you to her, or if said money was by way of an advancement to her, as one of your children.

"Defendant objects as incompetent, irrelevant and immaterial. Overruled.

"A. The money so furnished by me to said Edna A. Chaney, plaintiff herein, was a loan from me to her, and was not by way of an advancement to her as one of my children.

"Q. State for what purpose the said Edna A. Chaney wanted this money you furnished her, if you know.

"A. Edna A. Chaney wanted this money for the purpose of buying land at Payette, Idaho.

"Q. State how you transmitted this money to the said Edna A. Chaney, whether by draft or otherwise; state fully.

"A. I transmitted said money by mail in the form of two bank drafts, one for $2,000 and the other for $1,000; one of these I procured at the Shelby County State Bank and the other at the Harlan Bank, both at Harlan, Iowa."

It will be observed that the only objection made to questions propounded to the husband and to the father of Mrs. Chaney were made to questions of a preliminary nature; that they were prematurely made and properly overruled, and that no objection was made at the proper time nor was any motion made to strike the testimony when it was disclosed that documentary evidence existed. Clearly no error was committed in the admission of this proof.

The record discloses that when the land in question was purchased the deed was, by mistake, so drawn as to convey it to the husband instead of the wife; that the deed was delivered to the husband and he took it home and placed it among his valuable papers, and that a week or more thereafter Mrs. Chaney discovered the mistake and directed his attention to it, which was the first knowledge he had that a mistake had been made. Upon this point Mr. Chaney testified:

"Q. You reported to your wife that the Rans deed had been made out to you instead of her, did you not?

"A. She called my attention to it.

"Q. She discovered the mistake, then, before you discovered it?

"A. Yes.

"Q. How long was it after the deed had been executed, if you remember—4 or 5 months?

"A. No, sir; it wasn't more than ten days or such a matter, I don't know just exactly the time; I didn't keep track of it; it was just shortly afterward."

This testimony was fully corroborated by that of Mrs. Chaney, and it is uncontradicted.

The documentary evidence introduced shows that the deed was made, executed and delivered on April 27, 1911, and that the representations made by Chaney to the agent of Dun & Co., whatever they may have been, were made May 1, 1911,

three days after the delivery of the deed, at which time, as clearly appears from the record as above stated, neither Chaney nor his wife had knowledge that the deed contained his name instead of hers as grantee. Clearly Mrs. Chaney cannot be held to be estopped by the mistake of the grantor in the deed, of which mistake she had no knowledge, and it is not contended she knew her husband represented the property to be his own, and he denies that he did so.

Since it is not contended, and cannot be successfully maintained, that any act or omission upon Mrs. Chaney's part misled appellant into extending credit to her husband or into doing anything else to its injury, I have reached the conclusion that the doctrine of estoppel has no application to this case, and that the only reason for reversing the judgment of the trial court is that the evidence fails to show the land in question to be the separate property of the respondent, Edna A. Chaney.