456 P.2d 249

**Ruth Marie LEPEL, Plaintiff-Appellant,**

v.

**Gilbert Earl LEPEL, Defendant-Respondent.**

**No. 10246.**

Supreme Court of Idaho.

June 19, 1969.

Greene & Hunt, Sandpoint, for appellant.

James F. Lyons, of Nixon & Nixon, Bonners Ferry, for respondent.

DONALDSON, Justice.

June 5, 1967, plaintiff (appellant) Ruth Marie Lepel brought this action for divorce against her husband, defendant (respondent), Gilbert Earl Lepel on the grounds of extreme cruelty. Mr. Lepel "cross-complained" on similar grounds. The parties were married August 5, 1965 and trial was held in January, 1968.

The district court entered findings of fact, conclusions of law and judgment granting a divorce to Mr. Lepel on the ground of extreme cruelty and for the reason:

"That prior to the marriage of these parties the plaintiff agreed with the defendant to follow the teachings of the defendant's church and to accept the defendant's church as their family church, but after the marriage the plaintiff continually criticized the teachings of the defendant's church and ridiculed his faith. The plaintiff refused to attend the defendant's church with him, all of which acts on the part of the plaintiff caused the defendant extreme embarrassment and humiliation and made him extremely nervous and upset."

From the record it appears that there is substantial, competent, though conflicting evidence to support the finding of fact.

Custody of the parties' minor child was granted to Mrs. Lepel. Child support money of $50.00 per month and attorney's fees of $550.00 also were awarded to Mrs. Lepel.

All personal property in Mrs. Lepel's possession was granted to her. Likewise, Mr. Lepel was awarded the personal property in his possession.

Mr. Lepel's farm, which had been purchased prior to marriage, was awarded to him as his separate property. Mr. Lepel's father, Ben, had contributed some $40,000.-00 to the operation of the farm, allegedly on the basis that the senior Lepel and his wife would be able to retire and live on the farm. The court ruled that the two Lepel men operated the farm as a joint venture.

During the marriage the farm had been enhanced in value by $5,000.00 due to improvements made thereon. $2,821.00 cash had been contributed by Ben Lepel for the improvements. The remainder of the enhancement, $2,179.00 resulted from the labor of defendant Gilbert Lepel and Mr. and Mrs. Ben Lepel. Defendant's share of the labor was valued at $1,089.00, and was considered to be community property.

During the marriage $940.00 was paid on the farm mortgage from community funds. An additional $380.00 was paid by Ben Lepel.

34 head of cattle were purchased during the marriage at $18.00 per calf. 10 of the animals died. The court held that community funds and labor were expended to acquire the cattle, but that there was no evidence of their present market value. Therefore the surviving cattle were valued at their cost basis of $432.00 and awarded to defendant.

The court found that a house purchased during the marriage for defendant's parents had been bought with funds from the sale of 100 cattle owned by defendant prior to marriage. Hence the community had no interest therein.

$940.00 cash,[1] which was Mrs. Lepel's separate property at the inception of the marriage, was commingled with community funds, and was spent on miscellaneous living expenses.

Based on the above, the court awarded to Mrs. Lepel as her share of community funds:

| | |
|---|---|
| Improvements to real estate | $545.00 |
| Mortgage payments | 475.00 |
| Cost of cattle | 216.00 |
| | $1,236.00 |

Mrs. Lepel has appealed from the judgment to the Supreme Court of Idaho.

It is contended that the court's action in granting Mr. Lepel a divorce on the basis of the findings of fact previously quoted was violative of the following provisions of the Idaho Constitution:

"Art. 1 § 4. *Guaranty of religious liberty.*—The exercise and enjoyment of religious faith and worship shall forever be guaranteed; and no person shall be denied any civil or political right, privilege, or capacity on account of his religious opinions; but the liberty of conscience hereby secured shall not be construed to dispense with oaths or affirmations, or excuse acts of licentiousness or justify polygamous or other pernicious practices, inconsistent with morality or the peace or safety of the state; nor to permit any person, organization, or association to directly or indirectly aid or abet, counsel or advise any person to commit the crime of bigamy or polygamy, or any other crime. No person shall be required to attend or support any ministry or place of worship, religious sect or denomination, or pay tithes against his consent; nor shall any preference be given by law to any religious denomination or mode of worship. Bigamy and polygamy are forever prohibited in the state, and the legislature shall provide by law for the punishment of such crimes."

"Art. 21 § 19. *Religious freedom guaranteed.*— * * * It is ordained by the state of Idaho that perfect toleration of religious sentiment shall be secured, and no inhabitant·of said state shall ever be molested in person or property on account of his or her mode of religious worship. * * *."

Mr. Lepel was granted a divorce on the grounds of extreme cruelty. I.C. § 32–603(2). Extreme cruelty includes the infliction of "grievous mental suffering upon the other by one party to the marriage." I.C. § 32–605. This court has indicated that abusive criticism by one spouse of the other spouse's religion to the point where it causes worry, pain, and suffering to the other spouse may be considered as evidence of extreme cruelty. Thus in De Cloedt v. De Cloedt, 24 Idaho 277, 133 P. 664 (1913), the wife was granted a divorce because the husband, among other things, reviled her religion and continually attempted to convert her to his religion.

Doubtless Mrs. Lepel's conduct in refusing to go to her husband's church and in criticizing and ridiculing his faith constituted a constitutionally protected free exercise of religious belief. U.S.Const. Amendment 1, Idaho Const. Art. 1, § 4, Art. 21, § 19. Constitutionally protected acts, however, can create grounds for di-

---

[1]. During the marriage, the parties filed a joint return for 1965. They received a refund of $615.40 for that year. That sum had been withheld from Mrs. Lepel's earnings, some of which was earned prior to marriage and some subsequent to marriage. She contends that the entire refund was her separate property also.

vorce. A man's right to freedom of speech, for example, allows him to hurl the most vile forms of verbal abuse upon his wife, both publicly and privately. Nevertheless, if the verbal abuse results in grievous mental suffering to his innocent spouse, granting a divorce in her favor would be proper. See Donaldson v. Donaldson, 31 Idaho 180, 170 P. 94 (1917). The divorce decree would not prevent the errant husband from speaking as he chose. Likewise a divorce decree in the instant case does not prevent Mrs. Lepel from exercising her religious belief as she wishes. Nor does it establish a particular religion for her to follow. All it does is dissolve the marital relationship, because her conduct caused grievous mental suffering to her husband. Nothing in the decree forces her to go to Mr. Lepel's church or prohibits her from ridiculing his faith. But under the facts found by the district court and supported by the record, the court did not err in concluding that Mr. Lepel was entitled to his divorce. See generally, Annot. 25 A.L.R.2d 928 (1952).

██ Appellant claims that the award of $50.00 per month for support of the minor child was insufficient as a matter of law. Prior to marriage, Mrs. Lepel was employed as a school teacher with earnings in excess of $5,000.00 per year. Mr. Lepel's average income is less than $2,500.00 per year. Considering the needs of the child, the standard of living to which the child is accustomed, and the financial ability of the father to pay, it cannot be said as a matter of law that the award demonstrated an abuse of discretion on the part of the trial court. Meredith v. Meredith, 91 Idaho 898, 434 P.2d 116 (1967); Voss v. Voss, 91 Idaho 17, 415 P.2d 303 (1966); Nielson v. Nielson, 87 Idaho 578, 394 P.2d 625 (1964). The award of child support, furthermore, is not final, and under proper circumstances may be modified. Loveland v. Loveland, 91 Idaho 400, 422 P.2d 67 (1967); Dawson v. Dawson, 90 Idaho 234, 409 P.2d 434 (1965); Nielson v. Nielson, *supra.*

It is urged that the trial court erred in finding that the senior Lepels' financial and other assistance was given in furtherance of a joint venture between the two Lepel men to operate the farm.

Concerning joint ventures or adventures, this court stated in Stearns v. Williams, 72 Idaho 276, at 284–286, 240 P.2d 833, 838 (1952):

"Whether a relation of joint adventurers exists is primarily a question of fact for the trial court to determine from the facts and the inferences to be drawn therefrom.

"It is immaterial in whose name the property is acquired in a joint venture, as one holding title is a trustee for those who are so engaged in the joint enterprise.

"To constitute a joint adventure the parties may combine their property, money, efforts, skill or knowledge in some common undertaking, and their contribution in this respect need not be equal or of the same character, but there must be some contribution by each joint adventurer of something promotive of the enterprise; and even though one adventurer owns all the property used in the joint adventure, this is not conclusive in determining whether such relationship exists.

"A contract of joint adventure need not be expressed but it may be implied, in whole or in part, from the conduct of the parties; direct testimony or documents are not essential. Again, even though the details of such joint adventure were shown by indefinite and uncertain testimony, this does not preclude finding that such a joint adventure existed from their acts and conduct, and from the testimony and the inferences that might reasonably be drawn therefrom.

"A joint adventure is generally a relationship analogous to but not identical with a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit.

"In a joint enterprise there must be agreement to enter into an undertaking between parties having a unity of inter-

est in the objects or purposes of the agreement, and a common purpose in its performance; while a provision for sharing losses is important in construing an agreement for a joint enterprise, it is not essential, and neither an agreement to share profits nor losses is conclusive in the construction of the contract, but the intention of the parties controls. As to third persons, the legal and not the actual intention controls." (citations omitted)

■ Although the evidence on the issue is conflicting and sometimes contradictory, it is sufficient to sustain the district court's determination of the nature of the arrangement. Hence reversal would be improper. Gardner v. Fliegel, 92 Idaho 767, 450 P.2d 990 (1969).

■ Assuming, as appellant contends, that Ben Lepel was making gifts of his money and services, the fact that his conduct in this regard had started far before his son's marriage and continued through the marriage, and the fact that he never was able to get along with his son's wife indicate that the gifts, if gifts they be, were made to his son rather than to the community. In that case, they became the separate property of respondent. I.C. § 32–903.

■ Appellant's alternative contention that Ben Lepel's actions constituted loans to the community finds practically no support from the record. Furthermore, we do not see how such a construction would aid appellant. Assuming these transactions were loans, they have not been repaid at all. Thus the proceeds of the loans to the community would be subject to and balanced by the community debt, and there would be no net increase in the community estate.

■ Mrs. Lepel argues that a house bought for defendant's parents was community property. The house was purchased in Mr. and Mrs. Ben Lepels' name. Ben Lepel made the down payment on the house. Defendant executed a note obligat-

ing himself personally. The loan was secured by certain cattle which defendant owned prior to marriage. The purchase price due on the house was paid from the proceeds of the loan. Almost immediately thereafter the same cattle were sold, and the proceeds from the sale were used to pay off the loan in full.

The cattle were the sole and separate property of defendant. I.C. § 32–903. This being so, the proceeds from the sale of the cattle also were his separate property. I.C. § 32–903. Money borrowed on the faith and credit of separate property is separate property where the separate estate is the primary source of future repayment. Evans v. Evans, 92 Idaho 911, 453 P.2d 560 (1969). The funds used to pay for the parents' house, then were contributed partly by Ben Lepel and partly from defendant's separate estate. No property belonging to the community of plaintiff and defendant was employed to purchase the house. Nor is it contended that defendant husband was legally barred from making a gift of the proceeds from the sale of his separate property to his parents. The community consequently did not have an interest in the house.

■ Appellant also claims that she is entitled to the return of $1,555.40. $940.00 of this amount was cash which she brought with her to the marriage. The remainder was an income tax refund of excess funds withheld from her salary as a teacher in Montana during 1965. Part of this sum had been earned prior to the marriage. The rest had been earned after marriage but while living separate and apart from her husband (it appears that immediately after the marriage, Mrs. Lepel returned to Montana to finish teaching the school year). The $940.00 cash was appellant's separate property by virtue of I.C. § 32–903. The tax refund also might have been her separate property by virtue of I.C. §§ 32–903, 32–909, despite the fact it was not actually received by her until after she was married and living with her husband. Contrarily, since the parties filed a joint

return for 1965, and since the refund was due in some measure to her husband's net loss for the year (as income is determined under the federal income tax laws and regulations), it is arguable that some or all of the tax refund was community property. Nevertheless the entire fund of $1,555.40 was deposited in a joint checking account, used for general expenses, and so hopelessly commingled with other moneys as to prevent tracing.

> "Where the parties have not only commingled, blended and confused, but treated, regarded and handled their separate funds and community funds in their bank account as one fund, it all becomes community." Gapsch v. Gapsch, 76 Idaho 44, at 54, 277 P.2d 278, at 284, 54 A. L.R.2d 416 (1954); accord, Rose v. Rose, 82 Idaho 395, 353 P.2d 1089 (1960).

Because the fund was transformed into community property, appellant is not entitled to its return as her separate property.

Evidently, by the time of the divorce, all cash (or money in the checking account) belonging to the community estate had been expended on ordinary household and living expenses. Thus there remained no community funds to be divided between husband and wife.

 Respondent, in his brief, questioned the award of attorney's fees to appellant. No cross-appeal was filed, and appellant made timely objection to this procedure by way of a motion to strike. If a respondent, in an appeal, desires to have errors against himself corrected, he must present them to this court by way of cross-appeal. Coffin v. Bradbury, 3 Idaho 770, 35 P. 715, 95 Am.St.Rep. 37 (1894); cf. Harrington v. Hayden, 69 Idaho 22, 202 P.2d 236 (1949); Chaney v. Village of Middleton, 58 Idaho 289, 72 P.2d 850 (1937). Furthermore, a review of the Idaho statutory and case law reveals that the court did not abuse its discretion in awarding attorney's fees to Mrs. Lepel, even though Mr. Lepel was the prevailing party.

I.C. § 32–704; Riggers v. Riggers, 81 Idaho 570, 347 P.2d 762 (1959).

The judgment is affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, SHEPARD and SPEAR, JJ., concur.