691 P.2d 1275

Arene GARDNER, Plaintiff-Respondent,

v.

Vern GARDNER, Defendant-Appellant.

No. 14287.

Court of Appeals of Idaho.

Nov. 26, 1984.

R.M. Whittier of Whittier & Souza, Pocatello, for defendant-appellant.

Gus Carr Anderson, Pocatello, for plaintiff-respondent.

SWANSTROM, Judge.

This divorce case, tried in the magistrate division, presents us with the narrow question of whether a loan, obtained upon a promissory note signed by both the husband and the wife but secured by the husband's separate property, is the husband's separate debt or is a community debt. The magistrate held that "[a]lthough the [loan] ... was secured by [the husband's] separate property, the evidence indicates that that debt was a community debt in that both parties signed the promissory note, agreed to borrow the money, and borrowed it for a general community purpose." The wife appealed and the district court reversed. The district judge concluded that there was "insufficient evidence to justify the conclusion that the ... mortgage was a community obligation." The husband then appealed to us. We affirm the district court's order in part, vacate it in part and remand for further proceedings.

The pertinent facts are as follows. Vern Gardner and Arene Kern were married on May 30, 1975. Each entered the marriage as a homeowner. At the beginning of the marriage, they lived in Arene's home and began remodeling Vern's home for use as the marital domicile. The couple borrowed fourteen thousand dollars from a credit union to complete the remodeling. Although both Vern and Arene signed the promissory note evidencing the obligation, it was secured by a mortgage on Vern's separate property—a farm he owned near Inkom, Idaho. Later, both original homes were sold and a third was purchased by the parties. In March 1980, Arene filed for divorce. The magistrate granted the petition and, after a hearing, issued a decree dividing the marital assets and liabilities.

Our Supreme Court has established a standard for reviewing a decision of the district court after it has sat as an appellate court. We are required to review the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981). *See also Ustick v. Ustick*, 104 Idaho 215, 657 P.2d 1083 (Ct. App.1983). In the present case, as noted above, the magistrate found that the obligation was a community debt. We must therefore examine the record to determine whether the evidence supports this finding.

A debt incurred during marriage is presumed to be a community debt. *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974). This is a rebuttable presumption. In the case of a loan, the nature of the loan proceeds determines the nature of the debt. Therefore, to rebut the presumption, it must be proved "with reasonable certainty and particularity that the proceeds of the loan were ... separate property." *Winn v. Winn*, 105 Idaho 811, 814, 673 P.2d 411, 414 (1983). If the proceeds of the loan were separate property, the debt is also separate.

Our Supreme Court in *Winn* also restated a well-established rule:

In determining the nature of the proceeds of a loan, examination must be made of the basis of the extension of the credit. The proceeds of loans made upon the security of a spouse's separate estate are separate, *Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1974); *Lepel v. Lepel*, 93 Idaho 82, 456 P.2d 249 (1969); *Shovlain v. Shovlain*, 78 Idaho 399, 305 P.2d 737 (1956), and those made upon the security of the community estate are community, see *Speer v. Quinlan, supra* 96

Idaho at 130, 525 P.2d at 314. This rule is based upon the fact that the estate providing the security is the primary source of repayment.

105 Idaho at 814, 673 P.2d at 414. In *Lepel*, 93 Idaho at 86, 456 P.2d at 253, the applicable rule was said to be: "Money borrowed on the faith and credit of separate property is separate property where the separate estate is the primary source of future repayment. *Evans v. Evans*, 92 Idaho 911, 453 P.2d 560 (1969)." This latter statement alerts us to the limitations of this clear-cut rule. The "fact that the estate providing the security is the primary source of repayment" may not be the "fact" at all. In that event, we presume the rule does not apply. Furthermore, as the court in *Winn* said, "if there exists between the spouses an actual, articulated intent that the obligation be separate or community in character, that intent shall control." 105 Idaho at 814, 673 P.2d at 414.

■ In the present case, the magistrate made no finding and the record is unclear as to what the primary source of repayment of the debt was to be. Without this information, we are unable to determine whether the stated rule should have been applied. It is undisputed that the husband's separate property was the security for the loan. Assuming his separate property was also the primary source of repayment, the loan proceeds would be his separate property. Absent an overriding intent of the parties to the contrary, the debt would be the husband's separate debt. If, however, community property was to be the primary source of repayment, a different approach would need to be taken. We

note that income from separate property is generally community property. *See* I.C. § 32–906. In addition, compensation arising out of employment during the marriage is also community property. There is no showing on the record that either spouse had any income other than compensation from employment. Therefore, it appears on the surface that the primary source of repayment was to be community property. If so, the trial court on remand will have to consider other factors to determine the nature of the loan proceeds.

■ The court in *Winn* delineated some of the factors it considered appropriate in determining the nature of the proceeds of a loan:

The liability of the community for the loan is significant ... as is the source of repayment .... Related to these concepts is the basis of credit upon which the lender relies in making the loan ....[1]

Also relevant is who signed the documents of indebtedness ....[2]

The presence or absence of any or all of the above listed factors is relevant in determining the character of the credit by which a loan is obtained. None is conclusive. We deliberately refrain from selecting one item as dispositive. Such an approach is too rigid in light of our ultimate purpose of determining the likely intent of the spouses and in consideration of the highly individualistic and often complex fact situations presented.

*Id.* at 815, 673 P.2d at 415 (citations omitted).

■ It is apparent that the magistrate here *did* employ a balancing test, touching upon a couple of the factors cited in *Winn*.

1. It should be noted, however, that the Idaho Supreme Court in *Winn* said:

We specifically reject the California view that the intent of the lender conclusively determines the nature of the loan. *See [Gudelj] v. [Gudelj]*, 41 Cal.2d 202, 210, 259 P.2d 656 (1953). We find this approach unrealistic, for although at the time the credit was extended, the lender may have relied on the credit of either the community or separate estate, his true intent most likely is to collect the debt any way he can. He is unlikely to consider

himself bound by his initial basis of extension of credit.
105 Idaho at 815 n. 3, 673 P.2d at 415 n. 3.

2. This factor may be of little significance. As we noted in *Griffin v. Griffin*, 102 Idaho 858, 642 P.2d 949 (1982), the presence of a spouse's signature on loan papers often can be explained away merely as a precautionary measure required by a prudent creditor. *See also Stewart v. Weiser Lumber Co., Ltd.*, 21 Idaho 340, 121 P. 775 (1912).

Whether this approach was the correct one will not be known until the court first finds the nature of the primary source of repayment, as noted above. However, we can make one observation. The magistrate held

> [t]hat both parties signed the instrument indicating the loan upon the separate property of the Defendant and that Defendant and Plaintiff are presently indebted for said loan in the sum of Fifteen Thousand Dollars ($15,000.00) and this debt shall be considered as a community obligation of the parties by reason of the fact that the loan was secured for a community purpose, although the lien was placed only against the separate property of the Defendant and a mortgage was given by the Defendant to secure the payment of the Fifteen Thousand Dollars ($15,000.00). The monies so derived were used for a general community purpose of fixing up the Defendant's separate property on South Johnson Extension *to be sold for purchase of a community home.* [Emphasis added.]

This finding is not supported by the record. There is no indication that the husband's house was being remodeled for the purpose of sale; rather, the evidence clearly demonstrates the parties intended to reside there during the foreseeable future. The magistrate's finding, therefore, cannot stand.

We also note there is evidence in the record to indicate that remodeling of the husband's home was underway before the loan in question was obtained. Apparently, during the remodeling of the house, it was struck by a severe storm and the interior was exposed to the elements, resulting in heavy damage. The evidence suggests that it then became necessary to obtain additional financing to repair the extensive damage and to complete the remodeling. If, in fact, the court should find the loan proceeds were obtained for the purpose, in whole or in part, to repair a casualty loss to the husband's separate property, we believe this would be another factor to consider in determining whether the obligation to repay the loan is separate or community.

Even if the trial judge determines from a consideration of all proper factors that the loan proceeds were secured for a community purpose, nevertheless, in determining the amount of reimbursement due the community, the court should not be limited to the enhancement value produced by the "remodeling." In other words, the funds expended to repair damage to the property should be treated different from amounts the parties would have expended for remodeling had not the casualty occurred. The owner of separate property, not the community, ordinarily should bear uninsured casualty losses. On the other hand, the measure of the reimbursement for community expenditures on separate property for *improvements* thereto is the increase in value of the property attributable to community money and effort, not the amount or value of the community contribution. *Suter v. Suter,* 97 Idaho 461, 546 P.2d 1169 (1976).

When damaged separate property is repaired at the expense of the community, and the repairs are more than minor, routine maintenance, the community should be entitled to full reimbursement. This would be particularly true where, as here, the separate property is non-income producing and does not generate the funds required for those repairs. Here, there was evidence in the record that the value of the home was enhanced in value by the remodeling. There was also evidence showing that the home was sold for less than its appraised value because financial pressures upon the couple forced such a sale.

Finally, on remand the magistrate's phrase "general community purpose" will have to be clarified. In so holding, we assume that such a concept is a relevant factor to consider. It is not apparent to us how improvement of the husband's separate property, paid for with the proceeds of a loan secured by other of his separate property, was for a general community purpose. Unless the husband intended to make a gift of the home to the community—and there is nothing in the

record to show that this was contemplated—the community would only have the right to reimbursement for community funds expended in the project. *See Griffin v. Griffin*, 102 Idaho 858, 642 P.2d 949 (Ct.App.1982). Thus, because only the husband's separate property stood to benefit from the improvements, we cannot say that the mere fact the parties intended to reside in the home established that the remodeling was for a "general community purpose" or made the debt necessarily a community debt. The facts, as developed at trial, simply do not support such a conclusion.

In summary, we affirm the order of the district court to the extent that it vacates the judgment entered in the magistrate division. We vacate the remainder of the district court order because of the need to remand to the trial judge for redetermination of whether the loan is a community or separate obligation. Costs to appellant, Vern Gardner. No attorney fees awarded on appeal.

WALTERS, C.J., concurs.

H. REYNOLD GEORGE, Judge, Pro Tem., dissenting.

The majority has determined that it will require remand to answer the narrow question whether the loan obtained on a promissory note signed by both the husband and wife but secured by husband's separate property, creates a separate debt of the husband or is a community debt. I would uphold and sustain the district court in its finding that the debt in question was the separate debt of the husband.

The case of *Estate of Freeburn*, 97 Idaho 845, 555 P.2d 385 (1976), is an excellent guide to walk a court in the proper pathway to decide a case presenting the "narrow" question as set forth by the majority. The unanimous court began with the presumption that property acquired by a husband and wife during marriage is community property. *Speer v. Quinlan*, 96 Idaho 119, 131, 525 P.2d 314, 326 (1974). This presumption applies to all property, including property purchased with money borrowed by either spouse during the existence of the community. *Chaney v. The Gauld Co.*, 28 Idaho 76, 84, 152 P. 468, 471 (1915). The presumption also applies to money obtained on an unsecured note executed by one of the parties during marriage. *Simplot v. Simplot*, 96 Idaho 239, 246, 526 P.2d 844, 851 (1974). The character of an item of property as community or separate vests at the time of its acquisition. *Morgan v. Firestone*, 68 Idaho 506, 515, 201 P.2d 976, 981 (1948). The proceeds of a loan secured by a mortgage on the decedent's separate property are decedent's separate property. *Lepel v. Lepel*, 93 Idaho 82, 86, 456 P.2d 249, 253 (1969). That exercise of walking through the precedents set forth in *Freeburn* should give the answer to decide this case on appeal.

Beyond the precedents, the *Freeburn* case contains a set of facts that by analogy answer the "narrow" question. Orville Freeburn borrowed $30,000 on an unsecured note for the down payment on a motel. The finding that the proceeds of this loan were community was upheld. Orville borrowed an additional $40,000, most of which went towards the purchase of the motel. The second loan was secured by Orville's separate property. These loans were within a week of each other, and the appellants maintain a separate property interest was created. However, the court left the door open, in a proper case, to find that property might be in part community and in part separate. What the court did in *Freeburn* was to apply the inception theory declaring that the first loan created community property and that Orville's separate property estate was entitled to reimbursement for the investment in the motel from the loan secured by his separate property. Consistency would clearly tell you that if the first loan had been the one secured by Orville's separate property, the property would have been found to be separate with the right of the community to be reimbursed for the second loan.

The case of *Winn v. Winn*, 105 Idaho 811, 673 P.2d 411 (1983), as cited by the majority, confirms all the authorities cited

in *Freeburn.* Justice Huntley writing for the Supreme Court would only depart from those basic precedents: "when the collateral for the loan is the very asset for which the loan was obtained." Under such a state of facts, the Justice states that a different approach is required. He reasons that if the proceeds from a loan secured by separate property flow into the very collateral for the loan, some certain tests ought to be applied before the nature of the property is defined. It is difficult to see why such a state of facts would alter the inception theory doctrine but we need not concern ourselves since the money from the loan in our case at hand was used to pay on or purchase a different piece of property.

The precedents set forth are generally used to determine whether a given asset is a community asset or a separate property asset. In dealing with a debt, we might well call it a "negative" asset, and the same precedents should apply. The negative asset in question is in its nature separate.