758 P.2d 695

Patricia J. BEESLEY,
Plaintiff–Appellant–Cross
Respondent,

v.

Gilmore T. BEESLEY,
Defendant–Respondent–Cross
Appellant.

No. 16856.

Supreme Court of Idaho.

June 10, 1988.

Jenkins Law Office, Idaho Falls, for plaintiff-appellant-cross respondent. Royce Lee, argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for defendant-respondent-cross appellant. James D. Holman, argued.

HUNTLEY, Justice.

Patricia (Pat) and Gilmore (Gil) Beesley were married in Merced County, California in February of 1951. Gil was an enlisted man in the Army throughout most of their marriage and retired in 1972 after twenty-three years of military service.

The parties were divorced in Salt Lake City on January 17, 1985, after a lengthy separation beginning in 1977. The Utah court entered a default dissolution on Pat's complaint and application when Gil failed to appear and also awarded Pat the home located in Salt Lake City. The Utah court refused to rule on the division of the Beesleys' marital property outside its jurisdiction—in particular, Gil's military retirement pension—since it did not have personal jurisdiction over Gil. Pat subsequently filed suit in Idaho, where Gil had taken up residence, in order to obtain a judgment dividing the Beesleys' marital property.[1] The action was tried in the Bonneville County Magistrate's Court, and that court's division of property has been reconsidered and revised through a series of modifications and appeals both at the magistrate and district court levels before this appeal.

## ISSUES ON APPEAL

There are a number of issues requiring determination:

I. Whether Gil is entitled to credit for one-half the equity in the Utah Home.

II. Whether it was reversible error to use the 1985 date of divorce for valuation of property rather than the 1977 date of separation.

III. Whether Gil's military retirement benefits were correctly valued and divided.

IV. Whether the court erred in awarding Pat interest on her share of the unpaid balance of the property settlement.

V. Whether Gil is entitled to credit against Pat's share of the retirement benefits for $16,500 in monthly payments he made to Pat between separation and divorce.

VI. Whether the court erred in awarding Pat attorney fees.

## I.

We first address whether an Idaho court's award of credit for half the equity in the Utah home violates the requirement of giving full faith and credit to the Utah decree.

Gil was properly served summons of the Utah divorce proceedings and a default dissolution was entered when he failed to appear and defend. The Utah District Court had full authority to award the Salt Lake City home to Pat, such real property being within its *in rem* jurisdiction. The Utah judgment was a final adjudication and Gil made no attempt to appeal the Utah decree. A valid sister state judgment is *res judicata* and must be accorded full faith and credit as a final judgment in this state. U.S. CONST. art. 4 § 1. *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984); *Mitchell v. Pincock*, 99 Idaho 56, 577 P.2d 343 (1978). Absent fraud or collusion, moreover, the principle of *res judicata* is equally applicable to judgments by default—including default dissolutions. *Robinson v. Robinson*, 70 Idaho 122, 212 P.2d 1031 (1949).

The Utah court awarded Pat the Utah home and "all equity therein." Yet, when the Idaho courts were later called upon to divide the rest of the marital property, they were required to make an equitable distribution based upon a consideration of all the circumstances. *Phillips v. Phillips*, 93 Idaho 384, 462 P.2d 49 (1969). Although Idaho courts must recognize the validity of the award to Pat of the equity in the Utah home, they may credit the value of the home *in consideration of all the circumstances* and offset the division of all the marital assets accordingly; to hold otherwise would be unrealistic in a day and age when the accumulation of marital property often transcends the borders and jurisdictions of several states.

---

1. The Beesleys have lived in various places throughout the course of their marriage, namely, California, Washington, Idaho, New Jersey and Georgia. However, it was determined below that although Georgia is the marital domicile, "the law of Georgia and Idaho requires a similar test for division of marital or community property, that being an equitable division."

The equitable considerations discussed above are firmly entrenched in Idaho community property law. Idaho Code § 32–712(1) requires that community property must be assigned "in such proportions, from all the facts of the case and the conditions of the parties, [as the court] deems just...." And, "[i]f a homestead has been selected from the community property, it may be assigned to either party ... provided such assignment is considered in distribution of the community property...." I.C. § 32–712(3).

Pat's action in Idaho to receive her share of the retirement benefits was brought pursuant to I.C. § 32–712(1).[2] Thus, the courts below correctly ruled that Gil was entitled to have Pat's equity in the Utah home considered in the ultimate division of marital assets in Pat's Idaho action. *Cf. Sheppard v. Sheppard*, 104 Idaho 1, 655 P.2d 895 (1982) (holding that a state court may offset a financial award in a community property division when part of the community assets are in a trust created by federal law to protect tribal sovereignty; the result being that the Indian party remained the sole owner of the trust property, but was required to recompense the other party for his contribution to the community).

## II.

The next issue is whether the Idaho court erred in using the 1985 date of divorce for valuation of property rather than the 1977 date of separation.

■ When the Beesleys appeared before the magistrate court for the purpose of dividing the marital assets, the parties introduced evidence of the valuation of assets as of the date of separation and as of the date of divorce. It was then left up to the discretion of the magistrate which date to use.

Gil claims that it was error for the magistrate judge to choose the date of divorce for valuation of the marital assets. However, the record reveals no objection by counsel to Magistrate Judge Riddoch's choice. In fact, Gil's counsel admitted to Judge George on appeal that he told Magistrate Judge Riddoch that with regard to which date to use, "We said we didn't care which ever one you used." In the absence of objection, no error is preserved.

With regard to the valuation of marital assets,[3] we note an underlying problem that does not appear to have been properly addressed below. In computing the worth of the marital assets, it does not appear in the record that sufficient evidence was submitted regarding the debts and assets of both parties accumulated during the separation period from 1977 to 1985. All debts and income prior to the 1985 divorce date must be considered. A marriage continues, regardless of separation, until divorce is

---

**2.** Idaho Code § 32–712(1) provides:

> **Community property and homestead—Disposition.**—In case of divorce by the decree of court of competent jurisdiction, the community property and the homestead must be assigned as follows:
>
> 1. The community property must be assigned by the court in such proportions as the court, from all the facts of the case and the condition of the parties, deems just, with due consideration of the following factors:
>
> (a) Unless there are compelling reasons otherwise, there shall be a substantially equal division in value, considering debts, between the spouses.
>
> (b) Factors which may bear upon whether a division shall be equal, or the manner of division, include, but are not limited to:
>
> (1) Duration of the marriage;
>
> (2) Any antenuptial agreement of the parties; provided, however, that the court shall

have no authority to amend or rescind any such agreement;

> (3) The age, health, occupation, amount and source of income, vocational skills, employability, and liabilities of each spouse;
>
> (4) The needs of each spouse;
>
> (5) Whether the apportionment is in lieu of or in addition to maintenance;
>
> (6) The present and potential earning capability of each party; and
>
> (7) Retirement benefits, including, but not limited to, social security, civil service, military and railroad retirement benefits.

**3.** In utilizing the terms "marital assets" or "community assets" herein, we of course are mindful that what exists after entry of a divorce decree is a cotenancy estate; our continued use of the words chosen is for ease of analysis.

decreed. I.C. § 32–601. All earnings by either spouse after separation are community property. I.C. § 32–906; *Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976). And, there is a rebuttable presumption that all debt incurred during marriage is community debt. *Gardner v. Gardner*, 107 Idaho 660, 691 P.2d 1275 (Ct.App.1984); *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974). Such rules also obtain as to "marital" property in Utah.

On remand the court below must hear further evidence regarding the debts and assets of the parties. There are various chiropractic bills belonging to Pat which need to be characterized. There are also expenses affecting the computation of the net equity in the Utah home which need to be addressed further. While we decline to recognize that prospective closing costs of $5,000 on the *possible* future sale of Pat's Utah home are valid in computing net equity, it must be determined whether the cost of roofing the home should be offset against the value of the home. Testimony suggests that the roof repairs have never been made, but that the appraised value contemplates a repaired roof. Pat also alleges that she incurred other debts and loans during this period. While the foregoing listing of debts and loans is not exhaustive of the totality of financial events raised in this record which demand further perusal by the court below, they are indicative of the state of confusion in the record regarding critical issues that must be addressed in valuation and division of the community property. Certainly, if Pat's retirement fund of $8,563.12, which did not vest until after the beginning of the separation period, can be considered marital income, then all the debts and assets of both parties are worthy of characterization by the court as separate or marital in nature before a final equitable division of all marital assets can be devised.

### III.

The central issue in this appeal is the valuation and division of Gil's military pension under the Uniformed Services Former Spouses Protection Act (USFSPA), 10 U.S.C. § 1408 (1982).

The court determined that Gil could deduct his taxes, personal insurance premiums and savings plans from the *gross* amount of his military pension. The marital property to be divided between the parties was then calculated to be one-half of the *net* amount of Gil's pension. The court then computed the present value of the pension as of the 1985 divorce date[4] as based upon the net value of the pension ($68,942) and awarded Pat periodic payments (after calculating offsets) of $150 per month.

Pat argues that the division of the net value of the pension inequitably divides the marital assets in that its value is more nearly $77,651. Gil argues that USFSPA limits the benefits that a state court can divide to no more than 50 percent of the "total amount of the disposable retired or retainer pay (i.e., the net amount created after allowed deductions for insurance and taxes)." 10 U.S.C. § 1408(a)(4), (e)(1).

The California Supreme Court has squarely addressed the issue of *net* verses *gross* division of a military pension under USFSPA in the context of dividing community property. In *Casas v. Thompson*, 42 Cal.3d 131, 228 Cal.Rptr. 33, 720 P.2d 921 (1986), cert. denied, 479 U.S. 1012, 107 S.Ct. 659, 93 L.Ed.2d 713 (1986), the court determined that the primary purpose of the USFSPA is to remove the obstacles that state courts encountered in applying their divorce laws to military pensions under *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981):

> "[T]he committee intends [USFSPA] *to restore the law to what it was* when the courts were permitted to apply state divorce law to military retired pay."

*Casas*, 228 Cal.Rptr. at 42, 720 P.2d at 930, *citing*, 1982 U.S.Code Cong. & Admin. News, pp. 1555, 1599.

USFSPA's statutory title, *Payment of retired or retainer pay in compliance*

---

4. Since the Beesleys were married for 21 of the 23 years that Gil's pension benefits accrued, the court properly calculated the marital portion as 21/23 of Gil's military pension.

*with court orders,* signifies that it is basically concerned with the garnishment of military retirement pay. As a federal garnishment statute, "the disposable earnings limitations does not effect the size of the retiree's legal obligation to the ex-spouse, but only places limitations on monies that can be directly collected from the government employer in a pay period. (See *Evans v. Evans,* (W.D.Okla.1976), 429 F.Supp. 580)." *Casas,* 228 Cal.Rptr. at 42, 720 P.2d at 930.

Under 10 U.S.C. § 1408(a)(2)(C), a net figure, or "disposable retired or retainer pay," allows for the pensioned party to remove "properly withheld ... Federal, State, or Local income taxes ... [or deducted] Government life insurance premiums...." 10 U.S.C. § 1408(a)(4)(C), (D). Then, 10 U.S.C. § 1408(e)(1) limits the amount payable to "50 percent of such retired or retainer pay."

Congress recognized that the 50 percent cap on the net amount payable creates a deficiency in the equitable distribution of marital property:

> Moreover, [USFSPA] makes it clear that the mere attainment of that [50 percent] ceiling *in no way absolves the former member of still outstanding legal obligations for* alimony, child support or *other payments.* Any such unsatisfied obligation may be enforced by any means available under law....
> (See Rept. No. 97–502, supra, p. 11; § 1982 U.S.Code Cong. & Admin.News. p. 1606; italics added.)

*Casas,* 228 Cal.Rptr. at 44, 720 P.2d at 932.

The legislative intent framed above had been worked concretely into USFSPA in the language of 10 U.S.C. § 1408(e)(6):

> (6) Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired or retainer pay under this section has been made in the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4). *Any such unsatisfied obligation of a member may be enforced by*

*any means available under law* other than the means provided under this section in any case in which the maximum amount permitted under paragraph (1) has been paid and under section 459 of the Social Security Act (42 U.S.C. 659) [42 USCS § 649] in any case in which the maximum amount permitted under subparagraph (B) of paragraph (4) has been paid. (Emphasis added).

USFSPA clearly specifies in both its intent and operation that military pensions—taken as one part of the whole of the marital assets—can be divided under Idaho community property law in a pre-*McCarty* fashion.

■ In summary, the USFSPA permits a state court to consider the *gross* value of retirement benefits in computing the value of the marital estate. However, the USFSPA prohibits a state court from awarding the non-military spouse the right to collect more than 50 percent of the *net* monthly retirement payment. Thus, if an equal or equitable division were to require that 50 percent of the net retirement benefit would not satisfy Pat's share, the trial court would have to make up the difference by a disproportionate award of other assets. However, until a complete valuation of the community is computed, including appropriate credits for debts and offsets, one cannot determine whether the 50 percent proviso of 10 U.S.C. § 1408(e)(1) will come into play. It may well be that after considering offsets that payment due Pat will be less than 50 percent of net "disposable retired or retainer pay."

### IV.

■ The next issue is whether the court erred in awarding Pat interest on her share of the unpaid balance of the property settlement award.

In its initial appellate decision, the district court eliminated interest from the award to Pat. Judge George had reasoned that since Gil would be paying the award out of his military retirement pension, and since he had received no interest thereon, he should not have to pay any interest on

the award. Judge George reversed himself upon rehearing, noting that his initial reasoning would apply if Pat were receiving a monthly *percentage* of Gil's military retirement,

> [h]owever, such was not the case since the present value of the retirement was used [along with all the other marital debts and assets] to compute a property division and the wife received what could be denoted as a lump sum payment. Being a lump settlement Mrs. Beesley is entitled to the amount presently *and interest is appropriate if the amount is not paid in a lump sum.* (Emphasis added).

Judge George's analysis is correct. If the judgment cannot be satisfied immediately (e.g., if the satisfaction of the judgment in full would cause undue hardship to one of the parties), then Gil can pay Pat by installments. See, *Jackson v. Jackson*, 87 Idaho 330, 393 P.2d 28 (1964).

If installment payments are ordered in lieu of a lump sum award, then interest at the rate utilized to discount the retirement benefits to their present value must accrue on the judgment award to Pat.[5] If Pat is not given immediate control of the marital property, she must be given the interest to which she is entitled by law. It is simply inequitable to require her, in effect, to pay (i.e., by interest lost) for Gil's deferred payment schedule. See, *Lawson v. Lawson*, 87 Idaho 444, 394 P.2d 1008 (1964).

Of course, while the award of interest is appropriate when a judgment is paid in installments instead of in a lump sum, upon remand the court below will have to reevaluate the entire property settlement in light of our interpretation of 10 U.S.C. § 1408. In *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979), this court evinced two possibilities for dividing a pension:

> There are essentially only two ways to divide the retirement benefits upon divorce. One is to award the employee-spouse the pension and assign the non-employee-spouse assets of a value equal

to the present value of the contingent benefits. In some divorce cases this might be accomplished by awarding the non-employee-spouse assets of a value equal to the present value of the contingent benefits. In some divorce cases this might be accomplished by awarding the non-employee-spouse the family home, while awarding the employee-spouse the future right to the entire pension. The other method of dividing the rights is to reserve jurisdiction until retirement and divide the actual monetary benefit when received. The advantage of the lump sum approach is that it effects a complete severance of the spouses' interests and gives each spouse immediate control of his or her share of the community property. *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975).

As discussed in Part III above, USFSPA allows the non-military spouse only 50 percent of the net amount payable on the pension, with the deficiency between the *net* and *gross* value of the pension being recouped by a disproportionate award of other assets. However, possibly this creates a rather unique situation in which either option for dividing a retirement fund would not create an equitable division, particularly when the pension rights represent the largest portion of the marital assets. In such a situation, the court might consider a third option for dividing military pensions which is a hybrid of the two options evoked in *Shill:* the court may consider awarding the non-military spouse 50 percent of the *net* pension, with the *difference* between the *net* and *gross* values being reduced to present value and equitably satisfied from other marital assets. If the situation develops in which the *difference between the net and gross values,* as reduced to present value, represents a sum larger than the remaining combined marital assets, then the court may, at its discretion, make an award of installment payments (with interest accruing on the balance) in lieu of the lump sum award. This ap-

---

5. However, the interest rates as to that portion of any lump sum award not attributable to the retirement should be at the legal interest rate.

proach would create a fair and equitable distribution of marital assets without unduly burdening either spouse.[6]

## V.

■ The next issue is whether Gil is entitled to credit for $16,500 in payments made to Pat prior to the divorce decree.

Gil claims on cross appeal that he should be given credit for $16,500 that he paid to Pat in $300 monthly installments during the eight year separation prior to the divorce. There is some conflict in the record over the character of the $300 payments Gil made to Pat, but Gil claims that they were approximately equal to one-half of his monthly military pension checks at that time. Gil asserts that if he is not given credit for the $16,500 sum that this will create a windfall for Pat. We disagree and affirm the determination below.

Gil would be entitled to a credit for the $16,500 only if the retirement plan were valued as of the date of separation when the payments commenced. Obviously, the present value of the eight years of future payments from 1978 to 1985, when added to the value for the remaining life expectancy after 1985, would increase the total value as of 1985. Pat's one-half of that increased value would undoubtedly translate into approximately one-half of the total monthly benefits, or the $300 per month she received.

## VI.

Upon remand, in connection with fixing an appropriate division of the marital assets, the trial court should be mindful of the mandate of I.C. § 32–712(1) which requires that the community property must be assigned "in such proportions, and from all of the facts of the case and the condi-

tions of the parties, [as the court] deems just ..." In carrying out the mandate of the provision of the code, the court must determine whether the health and/or employment potential of the parties might require that there be an unequal division of the community property. There is not a complete record on that issue before this Court, other than brief references to the fact that the husband is impaired in his earning capacity and the wife is not, and, therefore, this Court makes no ruling on that issue.

## VII.

The final issue is whether the court erred in awarding Pat attorney fees.

In his Findings of Fact and Conclusions of Law, Magistrate Judge Riddoch ordered that Gil pay "reasonable attorney's fees not to exceed $2,000, ... the exact amount to be determined after a Memorandum of Costs is submitted to the court." Gil argued before the district court on appeal and now argues before this Court that the fees should be disallowed because the memorandum was not submitted within ten days. Judge George noted in his memorandum decision on the cross-appeals that the order for attorney fees was "an award and became part of the judgment and need not have been an element of cost that had to be included in a Memorandum of Costs and filed within 10 days. This Court will not disturb the attorney fee award."

Since this case is remanded, we will not pass upon the appropriateness of the award of attorney fees at this time. And, since the basis for the award of attorney fees is not apparent from the record, we invite the attention of the court and parties to I.C. § 32–704,[7] which reads in pertinent part:

---

6. We encourage the trial court to consider awarding, if feasible, a percentage of Gil's military pension, since granting Pat a percentage of Gil's pension ensures that she will receive her share of the benefit of cost of living increases in the military pension as they accrue.

7. The above version of I.C. § 32–704 is the amended version of 1980. This revision of the statute was made subsequent to our decision in *Mifflin v. Mifflin,* 97 Idaho 895, 556 P.2d 854

(1976). *Mifflin* applied the prior versions I.C. § 32–704 and 32–708, which when read together required that, while awarding attorney fees was discretionary, the court must first resort to the community property for the fees before taking them out of the separate property of the husband.

When I.C. §§ 32–704 and 32–708 were revised in 1980, the requirement that attorney fees be satisfied first from community assets was also removed. Our decision in *Ross v. Ross,* 103

**Allowance of support money, court costs and attorney fees—Representation of child.—** . . . .

2. *The court may* from time to time after considering the financial resources of both parties and the *factors set forth in section 32–705,* Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of that proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name. (Emphasis added).

The award of attorney fees in divorce actions and marital property divisions has long been the province of the trial court. See, *Sherry v. Sherry,* 108 Idaho 645, 701 P.2d 265, (1985), *Martsch v. Martsch,* 103 Idaho 142, 645 P.2d 882 (1982), *Lepel v. Lepel,* 93 Idaho 82, 456 P.2d 249 (1969). However, the court is also bound by the standard pronounced in I.C. §§ 32–704 and 32–705.

Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith. Costs to appellant, no attorney fees awarded on appeal.

BAKES and BISTLINE, JJ., concur.

DONALDSON, J., sat but did not participate due to his untimely death.

BAKES, Justice, concurring specially:

I concur in the Court's opinion. However, regarding Part IV, while I agree that when the trial court reduced the wife's interest in the retirement benefits to their present value and then determined that there were insufficient other assets to buy out that present value immediately, thus requiring periodic payments to satisfy that obligation, that interest must be included on that figure. However, if their are not other sufficient liquid assets which can be awarded to the non-employee spouse to off-

set that spouse's interest in the retirement benefits, then it would usually be better to determine what percentage of the retirement benefits should belong to the non-retiring spouse and then have the retirement payments divided based on that percentage as they are received. As the Court stated in *Shill v. Shill,* 100 Idaho 433, 439, 599 P.2d 1004, 1010 (1979):

"An award of a lump sum to a non-employee spouse may be the better remedy where there are substantial amounts of other liquid assets and the retirement either has occurred, as in *Ramsey [v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975)], or where retirement is imminent, such as where the employee spouse is close to mandatory retirement age. In those cases a reasonably accurate calculation of the present value of the pension benefits may be made by reference to actuarial tables which would indicate the pensioner's life expectancy and by discounting the sum that would be paid the pensioner during that period for the possibility the pension would not vest, reduced to present value. The presence of a substantial amount of other liquid assets will cushion the impact on the employee spouse of having to buy out the other spouse's interest. However, where the time for retirement is uncertain and where the value of the employee's monthly benefits is dependent upon the number of years of employment at retirement, a factor which may not be known at the time of the divorce, and where maintenance of the pension benefits after divorce will be from the employee spouse's separate property, or the property of a subsequent community, a reasonably accurate calculation of the present value of the pension rights derived from community effort may not be possible. In these cases, the trial court should consider withholding the retirement rights from the property disposition and decreeing that the parties hold the rights to the benefits as tenants in common. If and when the employee spouse

Idaho 406, 684 P.2d 1119 (1982), was based upon the language in the prior versions of I.C. §§ 32–704 and 32–708 which was still in effect when the trial court entered its judgment.

does obtain retirement benefits the trial court can then determine what portion of the rights were derived from community property and divide the payments accordingly."

SHEPARD, Chief Justice, concurring and dissenting.

I concur only as to the majority's remand for additional evidence. As to the remainder of the majority decision I dissent. As stated by the majority, the parties were divorced by decree of a Utah court in 1985 after a marriage which began in 1951. Plaintiff, Mrs. Beesley, brought this instant action three years ago seeking division of additional property not treated by the Utah court.

The uncontroverted evidence indicates Mrs. Beesley has been employed since 1962 and in 1984 earned a gross income of $19,000 per year. Her net income for that year was $15,000.

Mr. Beesley retired after serving 23 years in the United States Army as a band musician. His net retirement pay is $704 per month. His only other income is a military disability benefit of $64 per month. Mr. Beesley is hearing impaired, and it is asserted that such impairment has prevented him from obtaining employment. He has attempted, without success, the teaching of music in the public schools, and has operated a private studio for the teaching of music. It was stipulated that his net income from operating the music studio was not more than $1,000 per year. At the time of trial he was unemployed, with no other income than his military pension and his disability benefit. At the time of trial Mr. Beesley lived with and cared for his aged mother.

The parties separated in 1977 when the parties were living in Georgia. Mr. Beesley left Georgia for his original home in Idaho Falls to seek employment. Mrs. Beesley insisted at trial that at the time of separation there was a de facto agreement to divide the marital assets. She asserts that the agreement contemplated that Mr. Beesley would receive $5,000 in cash for the purpose of buying a car and taking the trip west in search of employment, and that she would receive the family's home in Georgia and 50 percent of Mr. Beesley's retirement which at that time was approximately $600 per month. Mrs. Beesley would also receive the family automobile and the furniture and furnishing in the family home. The magistrate judge rejected Mrs. Beesley's contention that there was such a de facto property division.

Following the separation Mr. Beesley began sending Mrs. Beesley $300 per month which Mrs. Beesley asserts was pursuant to the de facto property division agreement. Mr. Beesley hotly denied such assertion, and testified that said sum was for the benefit of Mrs. Beesley and to help the children who were on church missions. Mrs. Beesley secured a power of attorney from Mr. Beesley and sold the Georgia home, obtaining approximately $23,000 therefor. She then moved to Salt Lake City where she secured employment and purchased a home. The title to that Salt Lake City home was placed only in the name of Mrs. Beesley and her son. When news of this foul deed reached Mr. Beesley he discontinued the $300 per month payment. The proceeds from the sale of the Georgia home were invested in the Salt Lake City home, the total value of which was $59,000. The magistrate found that the equity in the Salt Lake City home was approximately $20,000.

At the conclusion of trial the magistrate attempted to balance the equities and arrive at a 50 percent division of the marital property to each party, having in mind that the Utah court had already awarded the Salt Lake City home to Mrs. Beesley. In balancing the equities the magistrate considered the marital property interests in the Salt Lake City home (as derived from the parties' interest in the Georgia home), the value of Mr. Beesley's military retirement, and the value of Mrs. Beesley's retirement from her employment. The magistrate refused to consider any indebtedness accrued by either of the parties during the separation, reasoning that such did not benefit the marital community. The magistrate also allowed as a set-off in favor of Mr. Beesley, the $16,500 which he had paid

for 55 months at the rate of $300 per month. The magistrate then concluded, after balancing all of the accounts, that a 50–50 division of the marital property would require Mr. Beesley to pay $2,000 at the rate of $150 per month. The magistrate reasoned that no interest would be allowed thereon because Mr. Beesley did not get interest on his retirement account, and hence neither should Mrs. Beesley get interest. That reasoning has a certain amount of practical charm.

Thereafter the magistrate court, the district court, and this Court became involved in a numbers game principally revolving around the $16,500 which Mr. Beesley has already paid Mrs. Beesley. The question seems to be whether said $16,500 was paid pursuant to the de facto agreement as initially argued by Mrs. Beesley, or whether the $16,500 as argued by Mr. Beesley was an intrafamily transfer and hence Mr. Beesley is hoist on his own petard.

In my view the initial decision of the magistrate appears to have been based in substantial justice, albeit his reasoning may have been faulty. Thereunder Mrs. Beesley retains the Salt Lake home, her interest in her retirement fund, whatever other assets she may have, and unimpaired net earnings of $15,000 per year. Mr. Beesley retains his military pension rights subject to an indebtedness of $2,000 payable at $150 per month. In short, his alleged net income is reduced to approximately $550 per month.

Based on the above scenario I would agree with the majority that the matter must be remanded for further proceedings. If the facts are found to be in accord with the stark representations set out above, equity should perhaps consider an unequal and disproportionate distribution of the marital property. In my opinion, however, findings are necessary as to whether Mr. Beesley is in fact as unemployable and destitute as he asserts. There are intimations in the record that following trial Mr. Beesley, while not affluent, is less destitute than at the time of trial, and hence more able to respond to a property division more akin to 50 percent to each party.