857 P.2d 641

**Orville Richard JENSEN,
Plaintiff–Appellant,**

v.

**Sherrel T. JENSEN, Defendant–
Respondent.**

No. 19661.

Court of Appeals of Idaho.

July 29, 1993.

Tuft & Bywater, Burley, for appellant. Steven A. Tuft argued.

Ling, Nielsen & Robinson, Rupert, for respondent. Roger D. Ling argued.

SWANSTROM, Judge.

Orville (Dick) Jensen brought this action for divorce from Sherrel Jensen in Cassia County. A magistrate tried the case deciding issues of property valuation, characterization and division. Dick appealed to the district court and Sherrel cross-appealed. Dissatisfied with the district court's appellate opinion, Dick brought this appeal seeking another review of issues decided by the courts below. We affirm the magistrate's decision in part, vacate in part, and remand.

Dick presents essentially three issues on appeal: first, he contends that the magistrate erred in ruling that the marital community had no interest in a cabin near Almo, Idaho. Second, he contends that the magistrate's valuation of the community's interest in "Jane's Fashion Circle" ("*Jane's*"), a retail clothing business, was erroneous. In addition, he questions whether the magistrate's findings on the value of *Jane's* are sufficient to enable a reviewing court to understand the basis of the decision. Finally, Dick challenges the district court's appellate decision which vacated and remanded the magistrate's ruling that each party should pay his or her own attorney fees after division of the community property.

The parties were married in Almo, Idaho, in 1957. Their children reached the age of majority before this action was commenced in 1988. Sherrel's parents, the Taylors, lived on a ranch near Almo, which had been in their family for several generations. In 1975, the Taylors allowed Dick and Sherrel to build a cabin on the ranch. The parties and their children contributed the majority of the labor in the construction of the cabin; however, other family members, including Sherrel's father, also worked on the cabin. It was completed in 1976. The Taylors never deeded the real property upon which the cabin was located to the Jensens; although Dick claimed at trial that the cabin had been given to them by Sherrel's father in a "handshake" deal. When her parents died, Sherrel inherited a five-acre parcel with the cabin in 1987. In his complaint for divorce, Dick claimed that the marital community owned or had an interest in the cabin because the community had furnished materials and labor to construct the cabin. The magistrate held that the community did not own any interest in the cabin and, similarly, that the community was not entitled to any reimbursement for enhancement of the value of Sherrel's inherited five acres.

In 1982, Sherrel and Dick purchased *Jane's*, a women's apparel store where Sherrel had previously worked as manager. *Jane's* was acquired with predominantly community funds, but it was operated as a partnership by Sherrel and the Jensens' two daughters. Sherrel had a fifty-two percent interest in the partnership and the

two daughters each owned a twenty-four percent interest.

The parties agree that Sherrel's partnership interest is community property, but they could not agree on the value of the community's interest in the partnership at the time of the divorce. The task of determining the community's net interest in *Jane's,* from conflicting testimony and various interpretations of accounting data, fell to the magistrate. Ultimately, the magistrate placed a value of $33,515 on the community's net interest in *Jane's* and awarded this interest to Sherrel. Dick contends that the magistrate undervalued the community's interest in *Jane's.*

Dick filed a motion for new trial contending that the magistrate had failed to properly apply to the community's value approximately $75,000 of community funds infused into *Jane's.* Dick argued that this sum should either be treated as a community loan to *Jane's* to be repaid or be treated as a capital contribution which would increase Sherrel's, and thus the community's, equity. The magistrate rejected both of these arguments and essentially treated the $75,000 as a gift from Sherrel and Dick to the business and to the two daughter-partners. The magistrate also ruled that the parties should pay their own attorney fees.

On appeal, the district court affirmed the magistrate's finding that the community had no interest in the cabin. The court also affirmed the magistrate's valuation of the community interest in *Jane's.* The court reversed and remanded the magistrate's decision that each party should pay his or her own attorney fees after division of the community property. The district court ruled that the magistrate should make more specific findings as to the amount of community funds spent on attorney fees prior to the divorce decree and whether the expenditures affected the overall distribution of community property.

■ Where, as here, the issues presented to us in this appeal were first decided in the magistrate division and were then presented to the district court on appeal, we review the magistrate's decision independent of, but with due regard for, the district court's appellate decision. *Hentges v. Hentges,* 115 Idaho 192, 765 P.2d 1094 (Ct. App.1988).

## I

The first issue presented to us rises from Dick's contention that the magistrate and district court erred by ruling that there was no community interest in the cabin. Dick does not dispute that the real property upon which the cabin is situated is Sherrel's separate property. Dick maintains, however, that the community has an interest in the cabin by virtue of the community labor and funds which were contributed to its construction.

■ A community is entitled to reimbursement to the extent its labor or funds enhances separate property during marriage. *Suter v. Suter,* 97 Idaho 461, 546 P.2d 1169 (1976). Sherrel had no separate property interest in the cabin or the land on which it was constructed until she inherited this five-acre parcel in 1987. Dick asserts, however, that under *Suchan v. Suchan,* 106 Idaho 654, 682 P.2d 607 (1984), the community should be reimbursed for the improvements made to the property.

■ Dick essentially requests this Court to reverse a factual finding made by the magistrate. The magistrate found that there was no tacit agreement by the Taylors that the real property and cabin would pass to the Jensens. We will not reverse a factual finding made by the trial court unless it is clearly erroneous. I.R.C.P. 52(a). Where a factual finding is supported by substantial, though conflicting, evidence, the finding will not be set aside. *Glenn v. Gotzinger,* 106 Idaho 109, 675 P.2d 824 (1984).

■ The facts in *Suchan* are similar, yet distinguishable, to those in this case. The parties in *Suchan* lived in a residence on three acres owned by Mr. Suchan's parents. The Suchans remodeled the home and installed other structures. Mr. Suchan received his parents' interests in the property before Mrs. Suchan filed for divorce.

At trial the magistrate exercised equitable powers to award the community a right to reimbursement for improvements made, although Mr. Suchan was awarded the home and three acres as his separate property. Unlike the parties in *Suchan,* the Jensens did not live at the cabin. Although they used it, other Taylor family members used it as well. Furthermore, Dick testified that the cabin was built so that all of the Taylors' grandchildren, not just the Jensen grandchildren, could stay there on visits.

Dick relies on his testimony that he and Mr. Taylor had a "handshake" establishing that he could build the cabin and that it would then belong to the Jensens, with the condition that everyone else in the family could use it. However, other evidence contravenes Dick's assertion that any agreement existed. Dick testified that all of Sherrel's family, and not just the Jensen family, had access to the cabin and in fact used it. Other family members, besides the Jensens and Mr. Taylor, had helped to construct the cabin. An existing foundation of a former cabin, a septic system and well were incorporated into the new construction. The Taylors paid all of the taxes levied against the property. The evidence was not sufficient to apportion the value of the various contributions.

In *Suchan,* the Court stated that a tacit agreement existed indicating that Mr. Suchan would eventually acquire the property. Perhaps this is the key difference between the cases. In this case, the magistrate specifically found that no tacit agreement existed. We hold that substantial, competent evidence, supports the finding that there was no tacit agreement when the cabin was being constructed that the cabin would be the property of the Jensens or that in the future, it would become their property. Therefore, we conclude that the magistrate did not err in awarding the cabin to Sherrel as her separate property and in declining to award the community any interest in the cabin or any right to reimbursement.

## II

Dick contends that the magistrate erred with respect to the valuation of the community's interest in the *Jane's* partnership. Dick asserts first that the magistrate's findings on this issue are inadequate. He argues that we should remand this issue to the magistrate with instructions that more detailed findings be made. Authority for this view exists in *Huerta v. Huerta,* 122 Idaho 278, 833 P.2d 911 (1992). In *Huerta,* the Supreme Court did not elaborate on how or with respect to what property the magistrate's findings were insufficient. The Court simply held that the findings were inadequate and that the record did "not provide a clear and obvious explanation." *Id.*

Sherrel contends, however, that the precise issue of whether the magistrate failed to make specific findings was not presented to the district court in the interim appeal. Consequently, Sherrel argues, the issue is not properly before this court. We disagree.

■ "The statement of issues presented will be deemed to include every subsidiary issue fairly comprised therein." I.A.R. 35(a)(4). One issue stated in Dick's notice of appeal to the district court was "[w]hether the trial court erred in valuing the community property interest in *Jane's....*" A claim of failure to make sufficient findings with respect to an issue—here the valuation of the community interest in a business—is subsumed in the broader question of whether a trial court's findings with respect to that issue are in error. Therefore, we will address Dick's contention that the magistrate failed to make sufficient findings.

The magistrate's findings regarding his valuation of the community's interest in *Jane's* are not extensive. Nevertheless, we will address the limited findings and, because we find it necessary to remand, we will infer certain other facts from the magistrate's findings and from the evidence in order to give guidance to the magistrate on remand.

We begin with the magistrate's initial finding of value: "The present inventory value of the business is $51,651.39, togeth-

er with the value of equipment which has been depreciated on the books in the amount of $7,513.77." The wording of this finding is misleading, and if read literally the finding cannot be upheld. However, the meaning is apparent when considered in context with the testimony of Douglas Reincke, CPA, called as a witness by Dick. The accountant for *Jane's* since 1989, Reincke had prepared certain financial statements showing the assets, liabilities, and owners' equity of *Jane's* as of June 30, 1990 (exhibit No. 8). This exhibit showed that the assets of *Jane's* consisted largely of the store's inventory, some cash, furniture, and fixtures. The parties did not dispute that the depreciated value of the furniture and fixtures shown on exhibit No. 8 was $7,513 below actual value. The "total owner's equity," the difference between total assets and total liabilities, was shown to be $51,651.39. Accordingly, the magistrate added $51,651.39 and $7,513.77, to arrive at $59,165 as the "present inventory value of the business." Recognizing this figure as the revised equity of the partners, as shown by the June 30, 1990, financial statements of *Jane's*, we uphold the magistrate's starting basis for determining the value of the community's interest in *Jane's*.

It is also apparent that the magistrate accepted Reincke's testimony that *Jane's* value should not be determined by conventional methods using capitalization factors or income averaging. Rather, the value of *Jane's* at the time of trial was more closely tied to the value of its net assets after payment of liabilities. Moreover, while much of the data comes from financial statements dated months before the trial, Reincke testified that the figures were reasonably accurate in reflecting the value of the business and the relative equity positions of the partners as of the time of trial and divorce.

The magistrate was persuaded that to determine the value of Sherrel's fifty-two percent partnership interest in *Jane's*—for the purpose of making a substantially equal division of the community property— it was necessary to determine the current

status of each partner's capital account. The latest statement of the accounts, at least those produced at trial as exhibits 9 and 10, had been prepared by another accountant employed by *Jane's* prior to April, 1989, when Reincke was hired. Reincke was questioned about the figures on these exhibits after the exhibits were admitted as business records of *Jane's*. He did not verify the information shown on these exhibits, but he did testify that he had prepared financial statements using some of the information and that he believed that the partners' current capital accounts were reasonably close to the figures shown on exhibit No. 9 for December 31, 1988. The exhibit showed Sherrel's capital account to be a positive $12,096. Her daughter Shelley had a negative account of $27,002 and her daughter Sheila's account was a negative $24,816.

Dick contended, as he still does in this appeal, that the daughters could be compelled to bring their negative capital accounts up to a level proportionally equal to Sherrel's capital account and that, if this were done, each partner's share of the partnership would be worth substantially more. Therefore, he argued, the fifty-two percent partnership interest awarded to Sherrel is worth substantially more than fifty-two percent of $59,165. His goal, of course, is to retain for himself a greater share of the community property to offset the award of *Jane's* to Sherrel.

Even though Sherrel testified that the partners had a written partnership agreement, it was not presented to the magistrate and is not in the appeal record. The magistrate noted that there was no evidence in the record as to what the partnership agreement may provide with regard to any requirement that the partners' capital accounts be proportionately equal. Nevertheless, the magistrate ruled that, pursuant to I.C. § 53–318(1), the two daughters could be required to bring their capital accounts from a negative figure up to an amount proportionately equal to Sherrel's capital account. The magistrate thereby increased the value of *Jane's* by an unstated amount representing the "required" con-

tributions from the two daughters. We express no opinion on the soundness of this approach which Dick urged at trial. Reincke had been asked at trial—with questions based on the information in the mentioned exhibits—how the parties' capital accounts could be brought into balance. He outlined the ways. Each way suggested by Reincke assumed that the daughters would eliminate their negative capital account balances by payment of substantial sums into the partnership, which would increase the value of the partners' equity. To a point, the magistrate's figures are explainable by this evidence.

For example, the magistrate found that fifty-two percent of the increased equity value was $63,515. Because $63,515 is fifty-two percent of $122,144, we can easily infer that the magistrate found that the daughters should contribute a combined amount of $62,979 to their capital accounts ($62,979 plus $59,165 equals $122,144).

The fact that the two daughters' capital accounts were below zero is not in dispute. The accountant's testimony in conjunction with exhibit No. 9 revealed that the negative balance of the daughters' capital accounts as of December 31, 1988, amounted to $51,819. As noted above, we infer that the amount the magistrate found the daughters must contribute was $62,979. We can also infer from exhibit No. 9 that daughter Shelly would need to contribute $27,002 to bring her capital account to zero and Sheila would need to contribute $24,816 to do the same. Because the magistrate ruled that the daughters, who had a forty-eight percent partnership interest, must bring their capital accounts proportionately equal with Sherrel's, they would have to contribute not only the amounts set forth in exhibit No. 9 to bring their accounts to zero, but together they would also have to contribute an additional $11,166 to match, on a proportional basis (forty-eight percent), the $12,096 positive capital account of Sherrel (fifty-two percent).[1] These assumed contributions of $27,002

plus $5,583 and $24,810 plus $5,583 total $62,979. This figure when added to the agreed $59,165 "net asset" value of the partnership equals $122,144. Fifty-two percent of this is $63,515, the value found by the magistrate for Sherrel's community property interest in *Jane's*.

Up to this point the lack of findings by the magistrate has made his steps difficult to follow, but it is apparent that he took a route suggested by Reincke's testimony based on exhibit Nos. 8 and 9. Unfortunately the steps may lead to an error which affects the result in the manner about which Dick has complained. Moreover, to uphold the result reached, we would have to assume certain facts about which there have been no findings. We will explain.

■ The magistrate found that $30,000 which Sherrel put into *Jane's* in November, 1988, was a loan to the partnership of her own separate funds inherited from her parents. The loan had not been repaid at the time of trial and Dick does not now dispute that the partnership owes Sherrel the money. Dick contends, however, that the magistrate improperly reduced the community interest in the partnership by the amount of this loan.

The magistrate's opinion simply said:

[T]he court finds that the community interest in [*Jane's*] is the sum of $63,515.19. It is agreed that the $30,000 loan from the defendant's personal property was made to the business, which will reduce the amount claimed. Therefore, the court finds that the community interest in the business is the sum of $33,515.19.

Dick argues that the loan was made to the partnership, thus benefitting the other two partners as well as Sherrel, yet the magistrate treated the loan as having been made exclusively for the benefit of the community. He contends that the magistrate incorrectly subtracted this partnership debt from the community's interest,

---

1. Reincke also suggested an alternate way which presumed that each daughter would bring her negative capital account to zero and Sherrel would reduce her capital account to

zero by withdrawal of $12,096 from the partnership, after which the net equities of the partners would be determined. Both methods suggested by Reincke produce the same result.

thus understating the value of the community interest in *Jane's* awarded to Sherrel. The record before us does not suggest that the debt of *Jane's* to Sherrel should have been subtracted from the partnership assets before computing the value of each partner's equity in the partnership.

We can find no substantial evidence in the record to support what the magistrate did here, but see footnote 3, *infra.* Ordinarily, for purposes of determining the value of the community interest in the partnership, the $30,000 should have been deducted as a liability of the partnership *before* the owners' equity was calculated and divided among the partners. The community's interest would not be reduced by the whole $30,000 when we consider that Sherrel's partnership interest was chargeable only with fifty-two percent of this debt. It appears that the other forty-eight percent of the debt, or $14,400, should reduce the equity of the other two partners. If so, then following the method for evaluating the partnership used by the magistrate, the community interest in *Jane's* would have been $47,917, not $33,515.[2]

### III

■ Dick moved for a new trial contending that the magistrate had failed to properly credit the community's interest in *Jane's* for approximately $75,000 contributed to the partnership. Dick asserted below and still maintains that the $75,000 contributed to *Jane's* amounted either to capital contributions or loans. The magistrate ruled that the funds Dick referred to constituted neither contributions to capital nor loans. Instead the magistrate ruled that evidence existed to support the finding that the funds were advanced to the partnership to cover losses without expectation of repayment. The magistrate thereby found that the funds were essentially gifts to *Jane's* and to the parties' daughters, the other two partners.

The record does not support the magistrate's conclusion. The magistrate did not identify evidence supporting the conclusion that the money was advanced to cover losses without any expectation of recoupment. Sherrel has not identified any evidence in the record indicating that it was either the community's or her intent to effectively make gifts to *Jane's*. Similarly our review of the record has not disclosed any such evidence or evidence supporting the existence of the elements of a gift. *See Zimmerman v. Fawkes,* 70 Idaho 389, 391, 219 P.2d 951, 952 (1950).

However, there is evidence in the record that the community advances were intended to be treated as contributions to capital. Reincke, for example, testified that he treated the community funds infused into *Jane's*, as shown in a column of figures on

2. This figure is based on the assumption that upon remand the magistrate will use the same method for evaluating the partnership interests based on the hypothesis that (1) the daughters have a contractual duty or a legal duty under I.C. § 53–318(1) to equalize their capital accounts through contributions to the partnership and (2) that the daughters are able and willing to make such contributions. The method also assumes a willingness on the part of the parents to enforce recoupment from the daughters in spite of the economic and personal consequences of such action. We find little support in the present record for that assumption. Indeed, that assumption seems to be contradicted by a ruling of the magistrate, discussed in part III, *infra,* that some of the community funds advanced to the partnership were intended to cover losses and were made without expectation of repayment.

We express no opinion about the appropriateness of using such a method, except to state that we can see no reason for Sherrel to be placed in the position where she, more than Dick, will suffer from the loss, if any, of the community's investment in *Jane's*.

We note that Sherrel did not object to the method used by the magistrate nor appeal to challenge the resulting valuation. However, because we are remanding with directions which alter the method used, we will not foreclose Sherrel's right on remand to raise objections. We also note that neither of the daughters was a party to this action and that any assumptions or findings made by the magistrate will not be binding upon the daughters.

The court in its sound discretion may take additional evidence and consider other methods which will provide a reasonable approximation of actual value as opposed to a hypothetical value of this community asset.

exhibit No. 10, as contributions to capital.[3] Furthermore, Sherrel's testimony concerning certain specific transfers of community funds she made to *Jane's* showed that she considered this money to be contributions to capital. On the other hand, Dick has failed to produce sufficient evidence that any of the community's contributions of capital were intended to be loans to the partnership. This is not a partnership accounting case, but we conclude that for the purposes of the issues here, as between Dick and Sherrel, the *community* funds put into *Jane's* by Sherrel were shown to be contributions to capital. The evidence will not support a finding that the community funds were loans to the partnership or gifts.

This does not mean that Dick has proven the community's interest in *Jane's* is worth even more than the values we have discussed before. Some evidence was introduced through Reincke indicating that all or substantially all of the community's capital contributions have already been accounted for in computing the partners' individual capital accounts. The magistrate, however, made no finding on this disputed factual issue and, because the evidence is in dispute, we can neither supply nor ignore the missing finding. If the magistrate continues to rely upon the method he has used for evaluating Sherrel's partnership interest, then the magistrate should satisfy himself that the figures for showing the status of the partners' individual capital accounts as of the time of divorce are reasonably accurate.

We empathize with the magistrate, noting that the evidence presented in this case on the value of *Jane's* was less than ideal. For reasons shown in this opinion, it was difficult for the magistrate to make accurate findings as to the valuations of the capital accounts and the partners' rights and duties. In remanding this case we cannot say to the parties that the result will be or should be any different than found by the magistrate. This is not a situation where precision is required either in the valuation of the community interest in *Jane's* or in the division of the community property.

## IV

Dick also asks this Court to review the district court's determination of the attorney fees issue. The magistrate simply ruled that both parties had sufficient funds with which to pay their own attorney fees. The district court ruled that the magistrate had failed to make adequate findings in light of Sherrel's contention that Dick had paid $1,500 of his attorney fees with community funds prior to the divorce and property division. The district court relied upon the principle that attorney fees incurred prior to the decree of divorce are community debts. *Josephson v. Josephson*, 115 Idaho 1142, 772 P.2d 1236 (Ct.App. 1989).

Dick asserts that the magistrate correctly decided the attorney fees issue; he disputes the district court's decision to remand this issue for additional findings. As support for the magistrate's ruling, Dick cites *Beesley v. Beesley*, 114 Idaho 536, 758 P.2d 695 (1988). The decision to award attorney fees is within the discretion of the trial court. *Martsch v. Martsch*, 103 Idaho 142, 645 P.2d 882 (1982). Dick contends that the magistrate acted within his discretion.

Sherrel contends that the district court correctly applied *Josephson, supra,* in its decision to remand. She asserts that pre-divorce attorney fees are community debts and must be accounted for in the property division and distribution. She contends the court correctly remanded the issue for additional findings.

---

**3.** Exhibit 10 also included the $30,000 Sherrel loaned to the partnership, which the parties agree was a loan of Sherrel's separate property. This may explain why the magistrate subtracted the $30,000 from the $63,515 "community interest" in *Jane's*, as we discussed in part II of this opinion, rather than treating the $30,000 as a liability of the partnership. Without more specific findings by the magistrate we are unable to determine whether the accounting evidence admitted at trial supports the magistrate's finding that the fifty-two percent community interest in the partnership was of the value of $33,515.

In *Josephson,* this Court relied upon *Mifflin v. Mifflin,* 97 Idaho 895, 556 P.2d 854 (1976), which interpreted the pre–1980 version of I.C. § 32–708. We recently addressed the issue now before us in *Bell v. Bell,* 122 Idaho 520, 835 P.2d 1331 (Ct.App. 1992). In *Bell,* we quoted in part a footnote from *Beesley, supra,* " '[w]hen I.C. §§ 32–704 and 32–708 were revised in 1980, the requirement that attorney fees be satisfied first from community assets was also removed.' " *Bell,* 122 Idaho at 527, 835 P.2d at 1338 (quoting *Beesley,* 114 Idaho at 542, n. 7, 758 P.2d at 701, n. 7); *see also Desfosses v. Desfosses,* 120 Idaho 354, 362, 815 P.2d 1094, 1102 (Ct.App.1991). The clear import of the Supreme Court's notation in *Beesley,* that the underlying statutory authority for the treatment of pre-divorce attorney fees as community debts has changed, is that the requirement to treat them as such set forth in *Mifflin* is no longer binding. Therefore, as in *Bell,* we hold that the rule that pre-divorce attorney fees *must* be treated as community debts, which the district court relied upon, has been statutorily set aside as noted in *Beesley, supra.*

There being no other argument advanced for the alleged error by the magistrate, we vacate the district court's reversal on this issue and reinstate the magistrate's ruling on attorney fees. However, due to the remand order issued in this opinion, we note that the magistrate is not necessarily bound by his previous decision on attorney fees should the circumstances resulting from more specific findings so indicate.

### CONCLUSION

Dick's challenge to the magistrate's decision that the community has no interest in the cabin located near Almo is unpersuasive. The finding that no tacit agreement existed to the effect that the cabin was or would be given by the Taylors to the Jensens in the future is supported by substantial, competent evidence, despite some conflicting evidence. Some of the magistrate's findings with respect to the valuation of the community interest in *Jane's* were unsupported by sufficient evidence. The

magistrate should also attempt to make more detailed findings on this issue on remand. The magistrate did not abuse his discretion in ruling that the parties should pay their own attorney fees. We affirm in part and vacate in part the magistrate's written opinions and the resulting amended judgment and decree of divorce as set forth above. We remand the case for additional findings consistent with the foregoing. No costs or attorney fees are awarded on appeal.

WALTERS, C.J., and SILAK, Acting Judge, concur.